### DIAMOND PAPER CO. v. PENRITE CREAMERY et al. (WARREN, Garnishee).

### No. 980.

Court of Appeal of Louisiana. First Circuit.
June 8, 1932.

A. W. Spiller, of Hammond, for appellant.

Burns & Pierson, of Ponchatoula, for appellee.

LE BLANC, J.

On November 19, 1930, Diamond Paper Company obtained a judgment in the city court of Hammond, on an open account, in the sum of $114.25, against S. C. Pendarvis, trading as Penrite Creamery.

On December 22, 1930, the judgment having become final and executory, the judgment creditor had Dr. R. E. Warren cited as garnishee to declare under oath whether he had in his hands or under his control, directly or indirectly, any money, rights, credits, or other property whatsoever, belonging to the defendant, or in which he had or has any interest for the whole or in part.

In answer to the interrogatories propounded to him, Dr. Warren declared that at the time they were served on him, he had the following property in his hands or under his control:

1. A check for $3.90 payable to the order of Penrite Creamery Company, dated December 5, 1930, signed by Thomas S. Ellis, drawn on the Merchants' & Farmers' Bank & Trust Company, Ponchatoula. La., which was placed in his possession by error and in which he disclaims any interest.

2. The sum of $15.60 in currency which was left at his office by Dr. V. S. Gautreau or some one representing him through error, and in which he also disclaims any interest.

These two items he says he was on the verge of returning to those who had left them with him, when the interrogatories were served on him.

3. One full barrel of cleaning powder known under the trade-name of "Wyandotte." Also three cartons cream-cheese containers and three route books.

4. Thirty-six ten-gallon milk cans and about thirty-five milk bottles which had been heretofore seized by the sheriff of the parish in the suit of the Citizens' National Bank of Hammond against S. C. Pendarvis, and for all of which property, he (Dr. Warren) had been appointed sheriff's keeper.

On January 14, 1930, plaintiff, through its counsel, filed a motion in which it is alleged that movers believe that the answers made by the garnishee are evasive and incomplete and that there is good reason to believe that Dr. Warren has property or effects in his possession or under his control belonging to the defendant, other than as shown by his answers. The motion contains a prayer to the effect that the garnishee be ruled into court to show cause, on a day stated, why judgment should not be rendered against him for the full amount claimed by plaintiff under its judgment against the defendant S. C. Pendarvis. To this motion, the garnishee filed an exception on the ground, as is therein stated, that the same "does not set forth any allegations which the defendant can answer, such allegations being required in proceedings of this nature." The exception which was overruled in the lower court is now urged before us.

Counsel's contention is that the garnishment herein has tendered an issue which really should be made the subject of a suit. That issue is one involving the sale of the business known as Penrite Creamery from S. C. Pendarvis, defendant herein, to Dr. Warren, the garnishee. The garnishment is not clothed

with the formalities of such a proceeding, it is claimed, until the answers of the garnishee have been traversed in such manner as to disclose a cause of action against the garnishee as fully as the defendant himself would have had to do had he brought suit in his own name directly against him. That contention seems to find support in a decision of the Supreme Court in the case of National Park Bank v. Concordia Land & Timber Company, 159 La. 86, 105 So. 234. In the present case, however, the garnishee did not plead that the traverse of his answers under the motion filed by plaintiff did not disclose a cause of action, which was the plea he should have made under the ruling in the authority cited, as it impresses us, but his exception merely set forth that the motion did not set forth any allegations which he could answer, "such allegations be required in a proceeding of this nature." As worded, the exception seems to be one of vagueness rather than of no cause of action, and so it seems to have been considered by counsel for the garnishee himself at the time he filed it, as is shown by the minutes of court of the day on which that was done. There seems to have been no reservation made to the ruling of the court which overruled it, and besides, there was no objection to the testimony tending to show the sale of the creamery from Pendarvis to Dr. Warren and the failure of the latter to have paid the purchase price. Indeed, as the note of evidence reveals, the garnishee joined issue on this, the sole question involved, so we consider it proper now to let the ruling of the lower court stand on the exception, and dispose of the case on the merits.

Counsel for plaintiff disclaims any intention on the part of his client of trying to hold the garnishee under the provisions of the Bulk Sales Law in this state (Act No. 270 of 1926), the only claim being that he should recover under the garnishment, the funds seized in Dr. Warren's hands that are due Pendarvis on the purchase price of the business which the latter sold him. As against such claim, Dr. Warren contends that he cannot be held as the alleged sale was never consummated, either by a complete meeting of the minds between them respecting the price, or by delivery of all the articles said to have been sold. This naturally brings for review before us the finding of facts made by the lower court which was in favor of the plaintiff, judgment having been rendered in its favor, and from which Dr. Warren has appealed.

■ Plaintiff, having tendered such issue, assumed the burden of proving the sale that is said to have taken place.

■ In reciting what transpired at the time of the purported sale by him to Dr. Warren, Pendarvis says that "the entire transaction was scattered." We are not sure

that we quite understand what he had in mind in using that term, but a consideration of all the testimony on the subject leads us to remark that it is fairly expressive of what took place, in that there does not at any time seem to have been a positive and definite agreement between them. According to him, it appears that negotiations began on a Saturday morning and lasted pretty much throughout the day. At that time, the sale was to be made on an inventory of all the property and at the list price of each article, and a chattel mortgage note held by the Citizens' National Bank would be assumed by the purchaser. Pendarvis himself admits, however, that on Saturday they never did agree about the price and never came to a definite settlement. They resumed negotiations on Sunday morning, when, according to him, Dr. Warren offered him a lump sum of $150, which he refused. It was then, he said, that the question of "good will," for which Dr. Warren had on the previous day said he would pay the sum of $100, came up again, and he agreed then to make the price $250. According to his testimony, then the price was definitely agreed upon at $250 and the assumption of the chattel mortgage note, and Dr. Warren was to call for and be delivered the property on the following day.

Dr. Warren does not dispute the fact that he was after buying Mr. Pendarvis' business, especially after having learned that the latter had to sell. He states positively that the consideration he agreed to was the assumption of the mortgage note and the payment of $150 in cash, and that the "good will" was left out of it.

On the vital question as to the price, therefore, we find the two parties to the agreement far apart, and, as both agree that there were no witnesses present who could corroborate either one side or the other, we are left in a state of uncertainty on this, one of the essential elements that constitute the contract of sale.

But we are still less satisfied with the sale being complete from the standpoint of the delivery of the things sold.

The testimony discloses that Dr. Warren did go, on the Monday morning following the negotiations already related, to obtain delivery and did carry away from the place where they were kept, certain of the articles included in the creamery. He admits, moreover, that he did say, to different persons, that he had bought out Pendarvis' business. He appears to have been honest in these expressions and no doubt did intend to carry out his part of the agreement; but, on that same Monday morning, it appears that while he was moving things out of the creamery, a Mr. Vail, manager of the Southern United Ice Company, objected to him moving a bottle washer included in the transaction, and told him not to move it until the rent due his com-

346

pany was paid. This much is testified to by Mr. Pendarvis himself. There were two months' rent due at $125. This bottle washer, it seems, was an important part of the equipment, and even then Dr. Warren was willing to go on with the deal provided he could obtain a written release of any lessor's claims against it. The written release was not secured and Dr. Warren did nothing more. He learned in the meantime, that Pendarvis' business was involved in some other debts and it was only a few days following that the Citizens' National Bank seized the bottle washer under the chattel mortgage which it held. He then found it necessary to consult an attorney, who advised him to return whatever articles he had already removed, and at the same time he (the attorney) wrote Pendarvis notifying him that Dr. Warren would go no further with the matter until the law in connection with such sales would have been complied with. As far as the record shows, that was the last of what transpired with regard to the purported sale.

Under the facts as we find them, and as we have here tried to recite them, it can hardly be said that the sale relied upon by the plaintiff herein was ever perfected. The law imposes on the seller the obligation of delivering the thing which he sells. Civil Code, art. 2475. Article 2482 imposes on him the further duty, when the object sold is out of his possession, to "redeem it at his cost, and deliver it to the buyer." This was in effect what was demanded of the seller in this case, with regard to the bottle washing machine, one of the most important items in the sale. His failure to comply with the law in this important respect gave rise to a cancellation of the sale on the part of the buyer. Civ. Code, art. 2485.

The judgment of the lower court therefore, if predicated on a sale from Pendarvis to Warren, as necessarily it had to be, was in error and should be reversed. We are unable, however, to determine, by the record as here presented, the rights of the judgment creditor with regard to that part of the property which the garnishee, by his answers to the interrogatories, admitted he had in his possession, and we think the proper proceeding is to remand the case to the lower court for the purpose of having that matter disposed of.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment of the lower court be and the same is hereby set aside, annulled, and reversed, and it is further ordered, adjudged, and decreed that the case be remanded to the lower court for the purpose of determining the rights of the plaintiff herein with regard to that property which the garnishee declared he had in his hands or under his control in his answers to the interrogatories served on him.